IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TEREGINALD WALLACE                                              PETITIONER

vs.                    Civil Case No. 5:05CV00257 HLJ

LARRY NORRIS, Director,
Arkansas Department of Correction                              RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Tereginald Wallace, an inmate of the Arkansas Department of Correction, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted of first degree murder by a jury on September 19, 2002, and he was sentenced as an habitual offender to forty years imprisonment.  He filed a timely notice of appeal (Respondent's Exhibit A) and a motion for a new trial on October 28, 2002, asserting the prosecution withheld evidence of a

2

statement by Demetrious Spencer that the State's sole eye witness to the crime, Sam Thomas, admitted his participation in the crime to another person.  Petitioner states the motion was denied after a hearing.  The Arkansas Court of Appeals affirmed his conviction and the denial of the motion.  <u>Wallace v. State</u>, 2004 WL 1059787 (Ark. App., May 12, 2004)(Respondent's Exhibit B).  The parties indicate Petitioner filed a petition for rehearing and a petition for review by the Arkansas Supreme Court, which the court denied on September 9, 2004.[1]  Petitioner states he did not seek post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure because Arkansas case law indicates issues arising under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), are not cognizable under that Rule.  He filed a petition for a writ of error <u>coram</u> <u>nobis</u>[2] in state court, which the Arkansas Court of Appeals summarily denied on September 28, 2005 (Petitioner's Exhibit B, attached to Supplement to Petition, DE #4).

In the present proceedings, Petitioner raises the following grounds for relief:

> 1.  The State committed a <u>Brady</u> violation by withholding the contents of the interview with Demetrious Spencer that could have shown Sam Thomas was the killer, and

> 2.  The State committed a <u>Brady</u>/<u>Kyles</u>/<u>Strickler</u> violation in portraying its sole "eyewitness" as believable because

---

[1]  Neither party submitted copies of these documents.

[2]  Neither party submitted a copy of this document.

3

he had charges pending but the State had no "cooperation agreement" with him.

Respondent admits Petitioner is in his custody pursuant to this conviction, and he does not have any non-futile state remedies available to him, but he contends the Petition should be dismissed.

I.

In its decision denying Petitioner's direct appeal, the Arkansas Court of Appeals set forth the following facts from the record:

> On March 30, 2002, the partially decomposed body of thirty-seven-year-old Lorenzo Petties was discovered in Willow Beach Lake, an oxbow lake near the Arkansas River. His hands and feet were bound by rope, and a cinder block "anchor" was lashed to him. A coat hanger was twisted around his neck. At trial, the State presented an eyewitness, Sam Thomas. Thomas claimed that one evening he came from a liquor store where he purchased drug paraphernalia and went behind a house on Townsend Street, where he prepared to smoke some crack. While he was there, he observed Wallace, along with Bryan Salley and Kevin Brown, arrive on the scene and subsequently beat and strangle Petties to death. Thomas stated that he was familiar with the victim from previous casual encounters and with Wallace because Wallace had previously sold him narcotics. Also admitted at trial was an audio cassette that Petties had made prior to his death in which he stated that Wallace had threatened to kill him and that he was "scared to death." The essence of Wallace's defense was that someone else killed Petties.

Wallace v. State, 2004 WL 1059787, 1 (Ark.App. May 12, 2004).

Petitioner raised ground one in his motion for a new trial and on direct appeal, and the state court set forth additional facts relating to this claim:

4

On April 4, 2002, police questioned Thomas about the murder. Thomas implicated Wallace, Salley, and Brown, who were subsequently arrested and charged with the murder. During the interview, Thomas also stated that he had told someone named "Tatum" about what he saw and that he had gotten a ride that night from someone named "Big Six." Wallace's defense counsel claimed that Wallace told him that Tatum was Demetrius Spencer and that Big Six was Kenneth Jordan. Jordan was found in the same cell block as Wallace in the Pulaski County Jail, where he was being held on an aggravated-robbery charge. Ultimately, Jordan would testify in Wallace's case that during the early days of April 2002, he was riding around with Thomas smoking crack. According to Jordan, Thomas told him that he and Petties were "getting high in Salley's truck and he got to tripping and I grabbed the push-wire and I wrapped it around his neck." However, he immediately told Thomas that he did not want to hear any further details and that, because they had used up their supply of narcotics, he "got rid" of Thomas.

Demetrius Spencer was not located prior to trial. Wallace moved unsuccessfully for a continuance on September 3, 2002, and again on September 11, 2002. In both motions, Wallace argued that he needed additional time to prepare his case. Significantly, neither motion specifically mentioned Spencer or the evidence that he might be able to provide. The motions were denied, and the case proceeded to trial.

During the early afternoon on the first day of trial, September 17, 2002, Spencer was shot in the chest. At the hospital the next morning, he gave a statement in which he denied that Thomas ever came to him and told him about the murder. He also claimed that someone named "Blue Boy" told him that Thomas had told him where Petties's body was located.

The trial ended on September 19, 2002, and the judgment and commitment order was entered ten days later. Wallace's trial counsel subsequently learned of Spencer's statement. He moved for a new trial on October 28, 2002, alleging that the failure to disclose Spencer's statement constituted a <u>Brady</u> violation. The trial court denied the motion, and Wallace filed his appeal.

<u>Wallace v. State</u>, 2004 WL 1059787 at 5.   The court concluded as follows:

> The Supreme Court in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." In <u>Strickler v. Greene</u>, 527 U .S. 263 (1999), the Court noted that the duty to disclose evidence is applicable even though there has been no request by the accused, and the duty encompasses impeachment evidence as well as exculpatory evidence. The standard for disclosure of such evidence is "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Id.</u> Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor," which imposed upon the State "a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." <u>Id.</u> The <u>Strickler</u> Court imposed a three-element test for finding a <u>Brady</u> violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

> We first note that the State contends that Wallace did not even conclusively establish that Tatum was Spencer. Our review of the record has convinced us that this contention is not without merit. In Thomas's statement to police, which Wallace contends is the basis for Spencer's impeachment testimony, Thomas makes it quite clear that he told an individual named "Tatum" about the murder FN2. However, in Spencer's September 18, 2002, statement to police, Spencer made it abundantly clear that his street name was "Tator" not "Tatum. FN3" We note as well that even though Spencer denied being told of the murder by Thomas, he did claim to get information from "Blue Boy." The record does not disclose what Blue Boy's real name is. It is possible that Blue Boy's real name could be Tatum, in which case, the basis for impeachment that Wallace asserts would simply not exist. Because Wallace had the burden of proving a <u>Brady</u> violation, this ambiguity cannot inure to his benefit either at the trial

6

court level, or here on appeal. However, we need not dispose of this case on this issue alone.

> FN2. WHITE: You tell anybody what happened?
> THOMAS: I told one dude about it, he-he got scared and goes man-you be quiet about it.
> WHITE: Who was that you were talking to?
> THOMAS: Uh-dude named Tatum.
> WHITE: Dude named who?
> THOMAS: Tatum.
> MOORE: Tater?
> WHITE: Tater?
> THOMAS: Tatum.
> WHITE: Tatum.
> THOMAS: Yeah.

> FN3. COCKRELL: You go by Tator?
> SPENCER: Yeah.
> COCKRELL: You go by Tator?
> SPENCER: Yeah.
> COCKRELL: Tator or Tatum?
> SPENCER: Tator.
> COCKRELL: Taylor.
> SPENCER: Tator.
> COCKRELL: How do you spell that?
> SPENCER: T-A-T-O-R

Assuming that Spencer is Tatum, we agree that Spencer's testimony is favorable to Wallace and that it was not made available to him in time to use at trial. However, we are unable to find that Wallace was prejudiced based on the facts as presented in this case. In Lee v. State, 340 Ark. 504, 511, 11 S.W.3d 553 (2000), our supreme court noted that prejudice can be demonstrated when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. We do not believe that Wallace met that burden.

In the first place, we are unable to find admissible any of the evidence that Wallace would glean from Spencer's testimony. In Harrell v. State, 331 Ark. 232, 962 S.W.2d 325 (1998), the supreme court held that no prejudice could be proven where the evidence cited by an appellant in an alleged Brady violation would not have been admissible to impeach the credibility of a witness for the State. In the instant case, while it is true that

7

Spencer's statement seemed to contradict Thomas's statement to police that Thomas had told Spencer about the murder, it was clearly, as presented and argued in this case, a collateral matter, and therefore not admissible for cross-examination. See White v. State, supra; Teas v. State, supra. We are not unmindful that impeachment evidence has been the basis for reversal as a result of a Brady violation. See, e.g., Farmer v. State, 54 Ark.App. 66, 923 S.W.2d 876 (1996)(holding that the State's failure to disclose the fact that an investigating officer had been forced to resign because he had filed a false police report [prejudiced defendant and violated Brady]). However, we are aware of no cases where a retrial has been required where the newly discovered evidence has not been admissible under our rules of evidence. Moreover, the supreme court has held that testimony which tends only to impeach other testimony is not grounds for a new trial for newly discovered evidence. Murchison v. State, supra. Furthermore, even if the evidence were admissible, we think the instant case is analogous to Smith v. State, 354 Ark. 226, 118 S.W.3d 542 (2003), where the supreme court held that evidence that would be useful only to raise minor defects in a witness's testimony would not be sufficient to create a reasonable probability that the results of the proceeding would have been different. Here, Wallace's impeachment evidence, i.e., that Thomas had related some information about the murder to Blue Boy rather than Spencer, is such a minor detail that we do not believe that it could have given rise to a reasonable probability that the result of the trial would have been different.

The balance of Spencer's potential testimony concerned admissions that Thomas allegedly made to Blue Boy. We acknowledge that had Blue Boy been able to testify as to such admissions, they would have been admissible as a statement against penal interest. Ark. R. Evid. 804(b)(3). However, Blue Boy's alleged statement to Spencer, which only concerned Thomas, was not subject to the statement-against-interest exception. Lawrence v. State, 81 Ark.App. 390, 104 S.W.3d 393 (2003). Accordingly, we cannot conclude that Spencer's testimony would have had any effect on the outcome of the trial, much less that there was a reasonable probability that the outcome would have been different. We therefore hold that the trial judge did not abuse his discretion in denying Wallace's motion for a new trial.

<u>Wallace v. State</u>, 2004 WL 1059787 at 7 -8.


II.

Under 28 U.S.C. §§ 2254(d)(1) and (2), a federal habeas court may "undertake only a 'limited and deferential review of [the] underlying state court decisions.'" <u>Morales v. Ault</u>, 476 F.3d 545, 549 (8th Cir.), <u>cert</u>. <u>denied</u>, 128 S.Ct. 177 (2007); <u>Lomholt v. Iowa</u>, 327 F.3d 748, 751 (8th Cir.), <u>cert</u>. <u>denied</u>, 540 U.S. 1059 (2003). This court may only determine whether the conviction or sentence violates the Constitution or laws or treaties of the United States. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 389 (2000). The question is whether the Petitioner seeks to apply a rule of law that was clearly established by the United States Supreme Court at the time his state court conviction became final. <u>Id.</u> at 379 (Stevens, J. concurring). If he is, he is entitled to relief if the state court's decision was either "contrary to, or involved an unreasonable application of," that established law. <u>Id.</u> at 391.

> '[A]n unreasonable application of [the Supreme Court's] precedent' occurs 'if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts.' <u>Williams v. Taylor</u>, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J.). To be unreasonable, the state court's application of Supreme Court precedent 'must have been more than incorrect or erroneous.' <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Rather, the application 'must have been objectively unreasonable.' <u>Id.</u> (internal quotation omitted).

<u>Garcia v. Mathes</u>, 474 F.3d 1014, 1017 (8th Cir. 2007).  Finally, "[f]actual findings by the state court 'shall be presumed to be correct,' and this presumption will be rebutted only 'by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." <u>Green v. Norris</u>, 394 F.3d 1027, 1029 (8th Cir. 2005).

Petitioner's asserts the prosecution withheld Mr. Spencer's statement disputing that Thomas told him about the murder, but indicating that Blue Boy told Spencer that Thomas told Blue Boy he knew where the victim's body was buried.  Petitioner interprets this as a substantial attack on Thomas' credibility and as establishing that Thomas was involved in the murder.  I find the state court recognized and applied the correct federal law.  Given the record before the court, the Arkansas Supreme Court's statement concerning Arkansas law and Petitioner's burden in this matter, I cannot find the state court's resolution of the issue is unreasonable.  Petitioner is not entitled to relief on ground one.


III.

Petitioner's second argument is that the State committed a <u>Brady</u>/<u>Kyles</u>/<u>Strickler</u> violation in portraying Mr. Thomas as a believable witness because he had charges pending at the time of trial, but the State contended it had no "cooperation agreement" with him.  Petitioner raised a different, but related, argument on direct appeal.  There, he argued the trial court did not allow him

to cross-examine Mr. Thomas sufficiently regarding bias or the possibility of gaining favor by testifying, and the court interfered with his Sixth Amendment right to confrontation.  As background only for ground two, the court sets forth the following findings by the Arkansas Court of Appeals:

> Wallace first argues that the trial court erred in denying him an opportunity to cross-examine Thomas about how Thomas pled a charge down from attempted murder to aggravated assault. He claims that cutting off his inquiry into the circumstances surrounding Thomas's 1994 plea agreement in which a charge of attempted murder was reduced to aggravated assault rose to the level of a "denial of confrontation." Wallace asserts that "Thomas manipulates the system and the people in it," and cutting off his cross-examination about how the case was pled down "cut to the heart of Thomas' credibility as a witness." He argues that if the jury heard that Thomas was once believed to have committed attempted murder of a police officer and the State pled it down, the testimony of Kenneth Jordan that Thomas admitted the murder to him "takes on a whole new light." We disagree.
>
> It is well settled that matters regarding the admissibility of evidence are left to the sound discretion of the trial court and rulings in this regard will not be reversed absent an abuse of discretion. Ellison v. State, 354 Ark. 340, 123 S.W.3d 874 (2003). We find no abuse of discretion here. The State asserts, among other things, that we should refuse to reach the merits of Wallace's argument because he failed to proffer the evidence he sought to be admitted, and we agree. See Thomas v. State, 349 Ark. 447, 79 S.W.3d 347 (2002). Wallace did not provide enough evidence of the circumstances surrounding Thomas's plea agreement for us to even begin to consider that his position is well taken. It is so well-settled as to be axiomatic that when challenging the exclusion of evidence, a party must make a proffer of the excluded evidence at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context. Id.
>
> From the record, we see that Wallace's counsel did little more than refer to the original charges and the charge

11

that Thomas ultimately pled to. Without a proffer of the
circumstances under which Thomas supposedly "manipulated"
the police and prosecution into making this plea
agreement, we are unable to fathom how Thomas, a homeless
person, who admitted to being illiterate and addicted to
crack, had accomplished this remarkable feat. More
importantly, we are also unable to see how it would have
influenced the outcome of Wallace's trial. Accordingly,
we hold that, without the proffer, Wallace has failed to
preserve his argument regarding the evidence he sought to
admit.

However, even if Wallace had preserved this issue for
appeal, we conclude that the trial judge did not err in
excluding testimony concerning Thomas's attempted-murder
charge. We hold that Wallace's attempt to use the
attempted-murder charge was not permitted by our rules of
evidence. Rule 609 of the Arkansas Rules of Evidence
provides for the impeachment of a witness's credibility
by proof of prior criminal convictions. Rule 608(b)
governs the admissibility of credibility evidence
consisting of specific instances of a witness's conduct
other than conviction of a crime. It provides in part:

> Specific instances of the conduct of a
> witness, for the purpose of attacking or
> supporting his credibility, other than
> conviction of crime as provided in Rule 609,
> may not be proved by extrinsic evidence. They
> may, however, in the discretion of the court,
> if probative of truthfulness or
> untruthfulness, be inquired into on
> cross-examination of the witness (1)
> concerning his character for truthfulness or
> untruthfulness, or (2) concerning the
> character for truthfulness or untruthfulness
> of another witness as to which character the
> witness being cross-examined has testified.

Here, the trial court correctly found that Thomas could
be impeached with his aggravated-assault conviction, but
not the attempted murder charge. Green v. State, 59
Ark.App. 1, 953 S.W.2d 60 (1997). Wallace does not argue,
nor could he, that attempted murder was conduct that is
probative of untruthfulness. See id.

Finally, as far as Wallace's candid admission that at
least one reason he wanted the testimony regarding

> Thomas's plea agreement to be admitted was his desire for
> the jury to hear that Thomas was once believed to have
> committed attempted murder of a police officer. We agree
> with Wallace's prediction that the excluded evidence may
> well have caused the testimony of Kenneth Jordan that
> Thomas admitted the murder to him to takes on "a whole
> new light." It is, however, the basis for yet another
> reason why we hold that the trial judge properly excluded
> the evidence. Rule 404(b) of the Arkansas Rules of
> Evidence expressly provides that evidence of other crimes
> and wrongs are inadmissible if offered to prove the
> character of a person in order to show that he "acted in
> conformity therewith." Central to Wallace's defense was
> his effort to blame Petties's murder on Thomas. We find
> no abuse of discretion in excluding this evidence because
> it was intended to establish Thomas's character as a
> murderer, solely for the purpose of bolstering Jordan's
> testimony that Thomas's actions were consistent with
> those of a murderer.

<u>Wallace v. State</u>, 2004 WL 1059787 at 1 -3.

Petitioner argues here that, after his trial and the denial of his motion for a new trial, the State <u>nolle</u> <u>prossed</u> the charges against Thomas, "which creates the inference there was an immunity agreement" with Thomas, which should have been disclosed prior to cross-examination, and which Thomas and the prosecutor denied during trial. He contends this is newly discovered evidence that entitles him to an evidentiary hearing and that this evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Petition, p. 9.

Petitioner raised this claim in his petition for a writ of error <u>coram</u> <u>nobis</u>, which the state court summarily denied. Respondent appears to argue both that the state court's dismissal

of the petition should be reviewed under 28 U.S.C. §§ 2254(d)(1) and (2) and Williams v. Taylor, and also that the claim is procedurally barred because Petitioner did not properly present it in state court. Respondent does not assert what state procedures were defaulted. While this court can envision situations in which such an alternative argument may be proper, because Respondent has not explained why the procedural default argument is relevant here, I find it has no merit.

I find the question here is whether the state court addressed the merits of Petitioner's claim that the dismissal of the charges against Thomas establishes there was an immunity agreement between the prosecutor and Thomas, which would require this court to consider the claim under 28 U.S.C. §§ 2254(d)(1) and (2) and Williams v. Taylor, or whether the new evidence should be viewed under § 2254 (e)(2), which provides as follows:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
>> (A) the claim relies on--
>>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and

14

> convincing evidence that but for
> constitutional error, no reasonable factfinder
> would have found the applicant guilty of the
> underlying offense.

See also Osborne v. Purkett, 411 F.3d 911, 915 (8th Cir. 2005).

As noted above, neither party submitted a copy of the coram nobis petition and the state court summarily denied relief. However, it appears from the State's response to the petition (Petitioner's Supplement to Petition, DE #4, Petitioner's Exhibit A), that the issue was sufficiently before the state court. Absent any indication that the dismissal was based on a procedural default, I find the state court addressed the merits of the claim and §§ 2254(d)(1) and (2) apply. See Brown v. Luebbers, 371 F.3d 458, 462 (8th Cir. 2004)(holding "the 'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard").[3]

In a similar case, the Eighth Circuit has held that whether a prosecutor made a deal with a witness is a "factual question, entitled to a presumption of correctness unless the petitioner can clearly and convincingly show otherwise." Dye v. Stender, 208 F.3d 662, 665 (8th Cir. 2000), citing Blair v. Armontrout, 916 F.2d 1310,

---

[3] Even if I were to find § 2254(e)(2) applies, Petitioner would not be entitled to relief because the fact that the charges against Thomas were nolle prossed is not clear and convincing evidence that the prosecutor withheld evidence of an immunity deal, and therefore the court does not even reach the question whether, absent the prosecutor's misconduct, any reasonable juror would have found him guilty.

15

1318 (8th Cir. 1990) (existence of deals is factual question); 28 U.S.C. § 2254(e)(1) (1999) (presumption of correctness); <u>Richardson v. Bowersox</u>, 188 F.3d 973, 977 (8th Cir. 1999).  In the <u>Dye</u> case, the prosecutor wrote a letter about a witness' cooperation, which was used to support his motion for reduction of his federal sentence, and another witness' cooperation was mentioned at his federal sentencing.  The Eighth Circuit made the following findings:

> Kranz testified at Dye's trial that he had been offered no deals or promises by state or federal officials at any time. Dye points out that both an assistant county attorney and an assistant United States attorney wrote letters in July of 1981 describing Kranz's cooperation in the murder investigation. Dye contends that these letters, which were not disclosed to Dye until after his conviction, are evidence of inducement for Kranz to testify against him and that even if they were unrelated to Kranz's trial testimony, they still constitute evidence that Kranz had had a deal with the government, and thus raise an inference that Kranz likely had another agreement for his testimony.

> We find no clear error in the district court's finding that Kranz did not have a deal and that Dye did not successfully rebut the presumption of the correctness of the state court's determination. The letters written on Kranz's behalf stressed his voluntary cooperation in helping to solve the murder and only mention the probability that he would testify at Dye's trial. Kranz had pled guilty to federal charges before the pizzeria murder occurred and was sentenced approximately a week after Dye's arrest, months before the letters were written. That Kranz moved for a reduction in his federal sentence a month before Dye's trial and may have used the letters as support does not clearly and convincingly belie the proposition that the government had no arrangements with Kranz, either during the investigation or during Dye's trial. The state court that heard Dye's third petition noted that such sentence reduction motions are routinely filed and that the sentence Kranz

ultimately received was entirely within the discretion of the federal judge. Kranz may certainly have hoped that his cooperation with authorities in solving the crime would help him, but the letters do not present clear, convincing evidence of an inducement. Accordingly, we cannot say that the district court clearly erred in finding that no deals had been made....

Brewer testified that state officials had not given him any promises or deals. At Brewer's sentencing hearing on November 4, 1981, more than a month after Dye's trial, Brewer's attorney mentioned Brewer's Dye-trial testimony during a discussion of a plea bargain. Dye points to this as evidence that Brewer's testimony at Dye's trial was given pursuant to a deal, the existence of which should have been disclosed.

The state courts noted that it was likely that Brewer's "deal," if he had one, was to plead guilty to a superseding indictment in exchange for a lesser sentence. There is evidence that Brewer had hoped to gain a sentence reduction by testifying against Dye, bragging about this possibility within the jail confines (evidence of which was presented at Dye's trial), but we cannot say that the testimony at his federal sentencing hearing conclusively shows that he had an arrangement with the government relating to this testimony. Accordingly, we find no clear error in the district court's finding that Brewer had no deal with the state.

Dye v. Stender, 208 F.3d at 665-666.

In the state proceeding here, respondent submitted an affidavit from the prosecutor attesting there was no deal with Thomas in exchange for his testimony (Attachment to response, Petitioner's Exhibit B, DE #4).   As stated previously, the only evidence presented by Petitioner is the fact of the dismissal of the charges.   However, there are many valid reasons a prosecutor may nolle pross charges.   As the State asserted in its response to the state petition, Thomas testified at Petitioner's trial that the

charges arose from a dispute with his ex-wife, records indicated she and Thomas still lived together and the alleged acts comprising the charges occurred in the home they shared.  This court agrees with the State's argument that an equally plausible explanation is that the charges were dropped because the victim no longer wished to pursue them for reasons of her own.  Petitioner has not shown it was unreasonable for the state court to deny his petition.

IT IS THEREFORE ORDERED that this petition be, and it is hereby, dismissed with prejudice.  The relief prayed for is denied.

SO ORDERED this 16th day of September, 2008.

_Henry L. Jones, Jr._
United States Magistrate Judge